UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MOSES, | ) | |
| ALL AMERICAN CLEAN LLC, | ) | |
| THEMI SACARELLOS, | ) | |
| ROUND THE CLOCK EAST INC., | ) | |
| ANTONIO VITOLO, | ) | |
| JAKE'S BAR AND GRILL, LLC, | ) | |
| ALFRED CASTIGLIONI, | ) | |
| CHARDONNAY'S INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00665-JPH-MJD |
| | ) | |
| COMCAST CABLE COMMUNICATIONS | ) | |
| MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Comcast funds a grant program, called Comcast RISE, that offers resources to help small businesses in the wake of the COVID-19 pandemic. To target its efforts, Comcast accepts applications from only small businesses that are majority-owned by a racial minority or by a woman.

Plaintiffs are four small businesses and their owners that would like to apply to Comcast RISE but don't meet Comcast's minority-ownership requirement. They brought this action under 42 U.S.C. § 1981, which generally prohibits racial discrimination in the making of contracts. Plaintiffs have filed a motion for a preliminary injunction, seeking an order that would require Comcast to allow them to apply to Comcast RISE. Because they have

1

not shown that they would suffer irreparable harm without the injunction, that motion is **DENIED**.  Dkt. [2].

# I.
# Facts & Background[1]

In response to the COVID-19 pandemic, "Comcast committed nearly $200 million to assisting customers and small businesses, regardless of race." Dkt. 29-1 at 2 (Ward-Maupin Declaration).  Additionally, in response to "alarming data that the pandemic had grossly disproportionate effects on small businesses owned by people of color, Comcast made a $100 million commitment to social justice and equality." *Id.*  That commitment included the RISE ("Representation, Investment, Strength, and Empowerment") program, which is "a grant program that provides recipients with some of Comcast's ordinary business[ ] services . . . at no cost." *Id.*

> Comcast RISE, a multi-year commitment to provide marketing, creative, media, and technology services to small businesses owned by people of color or women.

Dkt. 1 at 6 (verified complaint, citing ComcastRISE.com).  Those services can include general business and marketing consulting, media support, creative production of a TV commercial, and a technology makeover.  *Id.* at 8–9.  To receive those services, RISE recipients must sign liability and publicity releases.  *Id.* at 9.

---

[1] By agreement of the parties, there has been no discovery or evidentiary hearing. Dkt. 26.  The Court therefore bases these facts on the written record, including the verified complaint and declarations.

Only small business owned "by racial minorities" or "by women" may apply for a RISE grant.  Dkt. 29-1 at 2.

**ELIGIBILITY**

You are eligible to apply for this program if your business:

- Is at least 51% owned and operated by someone who identifies as Black, Indigenous, a Person of Color, or a Female
- Is independently owned and operated; and not a franchise location
- Is registered to conduct business in the US
- Has been operating for one or more years
- Is located within the Comcast Business or Effectv service area footprint

Dkt. 1 at 6.  Through six rounds of RISE grants, Comcast has awarded more than $60 million to nearly 8,000 small business.  Dkt. 29-1 at 4.  Applications for the seventh round are due June 17, 2022, dkt. 1 at 9, and after that Comcast expects to open an eighth round, dkt. 29-1 at 5.

Plaintiffs are four small businesses and their owners, who are all white males.  Dkt. 1 at 3.  Christopher Moses owns All American Clean LLC, a commercial cleaning company in Indiana.  *Id.*  Themi Sacarellos owns, with his father, Round the Clock Inc., a restaurant in Pennsylvania.  *Id.*  Antonio Vitolo owns Jake's Bar and Grill, LLC, a restaurant in Tennessee.  *Id.*  And Alfred Castiglioni owns Chardonnay's Inc., a restaurant in Massachusetts.  *Id.*

Plaintiffs "were ineligible" for RISE grants "because of their race," so they did not apply.  *Id.* at 9.

On April 4, 2022, Plaintiffs filed this lawsuit, dkt. 1, and a motion asking the Court to issue "a preliminary injunction enjoining Comcast . . . from operating the Comcast RISE award program with race-based qualifications pending the resolution of this litigation," dkt. 2.

## II.
## Applicable Law

Injunctive relief under Federal Rule of Civil Procedure 65 is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021). To obtain such extraordinary relief, the party seeking the preliminary injunction carries the burden of persuasion by a clear showing. *See id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Determining whether a preliminary injunction is appropriate under Rule 65 involves a two-step inquiry, with a threshold phase and a balancing phase. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). At the threshold phase, the moving party must show that: (1) without the requested relief, it will suffer irreparable harm during the pendency of its action; (2) traditional legal remedies would be inadequate; and (3) it has "a reasonable likelihood of success on the merits." *Id.* "If the moving party cannot establish . . . these prerequisites, a court's inquiry is over and the injunction must be denied." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

If the movant satisfies the threshold requirements, the Court proceeds to the balancing phase "to determine whether the balance of harm favors the

moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Whitaker*, 858 F.3d at 1044. This "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

### III.
### Analysis

42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." Congress passed § 1981 in 1866, shortly after the Thirteenth Amendment abolished slavery in the United States. *General Bldg. Contrs. Assn., Inc. v. Pennsylvania*, 458 U.S. 375, 384, 384 n.10 (1982). While § 1981's "principal object" was "to eradicate the Black Codes, laws enacted by Southern legislatures imposing a range of civil disabilities on freedmen," *id.* at 386, it "proscribe[s] discrimination in the making or enforcement of contracts against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 296 (1976); *see Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015) (§ 1981 "protects the right of all persons to make and enforce contracts regardless of race.").

Plaintiffs allege that the RISE program violates § 1981 because it "excludes white people from consideration, declaring them ineligible on the front end." Dkt. 3 at 12. They argue that they have satisfied each requirement for a preliminary injunction, *id.* at 10–20, while Comcast argues that they have not satisfied any of them, dkt. 29 at 22.

One threshold requirement for injunctive relief is that Plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winder v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "Harm is irreparable if legal remedies are inadequate to cure it." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021). This does not mean that legal remedies must be "wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Id.*

Plaintiffs argue that they face irreparable harm from "Comcast's ongoing race-based discrimination," which "no amount of damages can cure." Dkt. 3 at 18–20. In support, they cite cases that condemn racial classifications as inherently harmful. *Id.*; *see, e.g.*, *Shaw v. Hunt*, 517 U.S. 899, 908 (1996) ("[A] racial classification causes 'fundamental injury' to the 'individual rights of a person.'"); *Vitolo v. Guzman*, 999 F.3d 353, 364 (6th Cir. 2021) ("It is indeed 'a sordid business' to divide 'us up by race.'" (quoting *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 511 (2006) (Roberts, C.J., dissenting in part))). Plaintiffs also point to constitutional cases involving race-based classifications when "irreparable injury is presumed." Dkt. 3 at 19; *see, e.g.*, *Vitolo*, 999 F.3d at 360 (enjoining the Small Business Administration's "explicit racial and ethnic preferences" for federal COVID-relief funds); *cf. Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (irreparable harm is presumed for First and Second Amendment violations because those amendments protect "intangible and unquantifiable interests").

6

Comcast responds that irreparable harm—a traditional requirement for preliminary injunctive relief—cannot be presumed here because the text of § 1981 does not explicitly authorize injunctive relief.  Dkt. 29 at 33.  Comcast therefore argues that Plaintiffs have not shown an individualized injury and that their "allegations of racial discrimination . . . do not establish irreparable injury as a matter of law."  *Id.* at 32–33.[2]

### A. Inherent or Presumed Irreparable Harm

To meet their burden of showing irreparable harm, Plaintiffs rely on "the dignitary harm inherent" in "unashamed, on-its-face [race] discrimination."  Dkt. 33 at 19.  They thus contend that Comcast's express race-based classifications show irreparable harm on their own—presumptively—with no further proof.  *Id.*; *see* dkt. 4 at 19–20.  In support of this argument, Plaintiffs point out that race-based classifications imposed by the government create a presumption of irreparable harm, *see Vitolo*, 999 F.3d at 360, and "must be strictly scrutinized" under the Constitution's Equal Protection Clause, *Gratz v. Bollinger*, 539 U.S. 244, 270 (2003); *see Shaw*, 517 U.S. at 908.  But this case

---

[2] In support, Comcast cites only cases brought under Title VII.  *See* dkt. 29 at 32–33.  Title VII authorizes a broad range of remedies designed to make successful plaintiffs whole after trial.  42 U.S.C. § 2000e-5(g) (authorizing "reinstatement . . . with back pay . . . or any other equitable relief as the court deems appropriate"); *Williams v. Pharmacia Inc.*, 137 F.3d 944, 952 (7th Cir. 1998).  For that reason, courts have rarely found Title VII plaintiffs to have experienced irreparable harm that warrants preliminary injunctive relief.  *See Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Shegog v. Bd. of Educ. of City of Chicago*, 194 F.3d 836, 839 (7th Cir. 1999).  Allegations of race discrimination in employment are often pursued under both Title VII and § 1981, making Title VII's remedies available after trial.  *See Walker v. Abbott Laboratories*, 340 F.3d 471, 474–76 (7th Cir. 2003).  For the reasons in this order, the Court need not address whether cases addressing irreparable harm under Title VII are relevant to cases brought only under § 1981.

is neither constitutional nor against the government, so the Court confronts a different question—have Plaintiffs shown that irreparable harm is also inherent or presumed in a statutory claim against a private company?

Plaintiffs cite no Supreme Court or Seventh Circuit authority for that extension.  *See* dkt. 3 at 18–20; dkt. 33 at 18–19.[3]  That's likely because in cases where the claims are based on a statute rather than the Constitution, courts ordinarily "may presume irreparable harm only when a party is seeking an injunction under a statute that *mandates* injunctive relief as a remedy." *First W. Capital Management Co. v. Malamed*, 874 F.3d 1136, 1140 (10th Cir. 2017); *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393–94 (2006) (disfavoring categorial rules for determining injunctive relief); *Life Spine, Inc.*, 8 F.4th at 545.  And here, Plaintiffs' claims are brought under a statute that does not mandate injunctive relief.  *See* 42 U.S.C. § 1981.

In short, Plaintiffs ask the Court to substantially expand the law—with no Supreme Court or Seventh Circuit precedent in support—by finding irreparable harm inherent or presumed in a private company's use of racial classifications.  But such a finding is disfavored under "traditional equitable principles" that apply here because § 1981 does not provide otherwise.  *eBay*

---

[3] Plaintiffs note that the Eleventh Circuit has held that "irreparable injury may be presumed from the fact of discrimination" by a private entity in violation of fair housing statutes, but that holding was specific to the discrimination-in-housing context because of (1) the necessity of housing and the potential disruption to community ties; (2) the impossibility of relief after trial since new tenants would have to be evicted for successful plaintiffs to return; and (3) the inability of money to compensate for "the loss of safe, sanitary, decent, and integrated housing." *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423–24 (11th Cir. 1984); *see Valencia v. City of Springfield, Ill.*, 883 F.3d 959, 965 n.6 (7th Cir. 2018).

8

*Inc.*, 547 U.S. at 393–94.  So the circumstances presented in this case do not "clearly demand" preliminary injunctive relief.  *See Cassell*, 990 F.3d at 544.

### B. Particularized Irreparable Harm

Plaintiffs do not argue any irreparable harm specific to them, relying instead on presumed irreparable harm from Comcast's use of race-based classifications.  *See* dkt. 3 at 18–20.  They do not, for example, allege that they have been singled out among white male small-business owners.  *See* dkt 1.  Nor have they identified personal reputational or dignitary harm—to the individuals or the businesses—from RISE's eligibility requirements.  *See id.*; *Life Spine, Inc.*, 8 F.4th at 546 ("Injury to reputation or goodwill is . . . often viewed as irreparable.").

Plaintiffs also do not argue that their businesses will suffer irreparable harm from the loss of RISE services.  *See id.* ("The alleged harm is simple and straightforward: ongoing race discrimination.").[4]  Nor could that argument succeed, since Comcast's unrebutted evidence is that the "services provided through the RISE program are also offered commercially to small businesses without regard to race."  Dkt. 29-1 at 3.  Plaintiffs could therefore pay for those services and seek to recover their monetary value in this lawsuit.  *See E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703

---

[4] Plaintiffs mention in reply that "there is no obvious way to calculate damages" because they may not be selected for RISE even if they could apply.  Dkt. 33 at 18–19.  That is too late and too underdeveloped to expand their irreparable harm argument.  *Carroll v. Lynch*, 698 F.3d 561, 564 n.2 (7th Cir. 2012).  Moreover, "speculative injuries do not justify" injunctive relief.  *E. St. Louis Laborers' Local 100*, 414 F.3d at 704.  In other words, Plaintiffs' harm would "elude[ ] calculation because it is speculative, not because, if it occurred, it could not be quantified."  *Id.* at 705.

(7th Cir. 2005) ("An injury is irreparable . . . only if it cannot be remedied through a monetary award after trial.").

\* \* \*

Plaintiffs have not shown that irreparable harm may be presumed, or that they are likely to suffer particularized irreparable harm by not being able to apply for a RISE grant. Therefore, this is not "a case clearly demanding" preliminary injunctive relief. *Cassell*, 990 F.3d at 544.[5] Plaintiffs' motion is **DENIED**.

## IV.
## Conclusion

Because Plaintiffs have not shown irreparable harm, their motion for preliminary injunction is **DENIED**. Dkt. [2].

**SO ORDERED.**

Date: 6/7/2022

                                        *James Patrick Hanlon*
                                        James Patrick Hanlon
                                        United States District Judge
                                        Southern District of Indiana

Distribution:

Luke Berg
Wisconsin Institute for Law & Liberty, Inc.
luke@will-law.org

Paul D. Clement
Kirkland & Ellis LLP
pclement@bancroftpllc.com

---

[5] Because Plaintiffs have not shown irreparable harm, the Court does not consider the other preliminary injunction factors. *See Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998).

Richard M Esenberg
Wisconsin Institute For Law & Liberty
rick@will-law.org

Daniel P. Lennington
Wisconsin Institute for Law and Liberty
dan@will-law.org

Kasdin Miller Mitchell
Kirkland & Ellis LLP
kasdin.mitchell@kirkland.com

Katherine D. Spitz
Wisconsin Institute for Law & Liberty, Inc.
kate@will-law.org